JN:PJC/GSM
F. #2021R00254

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

RAMON OSVALDO PENA,

               Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

I N D I C T M E N T

Cr. No.    1:21-cr-00560 (EK)(CLP)
_____
(T. 18, U.S.C., §§ 371, 981(a)(1)(C), 1349
and 3551 et seq.; T. 21, U.S.C.,
§ 853(p); T. 28, U.S.C., § 2461(c))

THE GRAND JURY CHARGES:

## INTRODUCTION

At all times relevant to this Indictment, unless otherwise indicated:

I.    The Defendant and Relevant Entities and Individuals

       1.    The defendant RAMON OSVALDO PENA was a resident of New York, New York and Maywood, New Jersey.

       2.    Square Holdings was a New York, New York based sole proprietorship owned by the defendant RAMON OSVALDO PENA.

       3.    Innovation Transport LLC ("Innovation Transport") was a New Jersey limited liability corporation that was co-owned by the defendant RAMON OSVALDO PENA and Co-Conspirator 1, an individual whose identity is known to the Grand Jury.   Innovation Transport was a waste hauling company that conducted business throughout the New York City area.

       4.    Orlando Sanay (the "Orlando Sanay Business") was a New Jersey based sole proprietorship owned by Co-Conspirator 1.

5.      IBM Enterprise was a New Jersey limited liability corporation owned and operated by Co-Conspirator 2, an individual whose identity is known to the Grand Jury.

6.      BCD Enterprise ("BCD") was a Pennsylvania based sole proprietorship owned and operated by Individual 1, an individual whose identity is known to the Grand Jury. Innovation Transport used BCD as an independent contractor in its waste hauling business.

7.      Co-Conspirator 3, an individual whose identity is known to the Grand Jury, was a resident of Jamaica, New York.

II.      The Small Business Administration Economic Injury Disaster Loan Program

8.      The Economic Injury Disaster Relief Program was a United States Small Business Administration ("SBA") program that provided low-interest financing to small businesses, renters and homeowners in regions affected by declared disasters through Economic Injury Disaster Loans ("EIDL").   The Coronavirus Aid, Relief, and Economic Security ("CARES") Act authorized the SBA to provide EIDLs of up to $2 million to eligible small businesses that experienced substantial financial disruption due to the COVID-19 pandemic. The CARES Act also authorized the SBA to issue forgivable advances of up to $10,000 to certain small businesses within three days of applying for an EIDL ("EIDL Advances").   The amount of the EIDL Advances were determined based on the number of employees working for the small business applicant and the location of the business.   The EIDL Advances did not have to be repaid, but EIDLs were subject to repayment and interest.

9.      In order to obtain an EIDL and/or EIDL Advance, a qualifying business was required to submit an application to the SBA and provide information about its operations, such as the number of employees it had as of January 31, 2020, gross revenues for the 12-month period preceding the disaster (the "Relevant Period") and cost of goods sold during the Relevant

Period.   In the case of EIDLs for COVID-19 relief, the Relevant Period was the 12-month period preceding January 31, 2020.   The applicant was also required to electronically certify that all the information in the application was true and correct to the best of the applicant's knowledge.

10.     EIDL applications were submitted directly to the SBA and processed by the SBA with support from a government contractor.   The SBA's online server was located in Des Moines, Iowa.   The amount of the EIDLs, if the applications were approved, was determined based, in part, on the information provided by the applicants about the number of employees, gross revenues and cost of goods sold for the Relevant Period, as described above. Any funds issued pursuant to an EIDL and any EIDL Advances were issued directly by the SBA from the SBA Denver Finance Center in Denver, Colorado.   EIDL funds could be used for payroll expenses, sick leave, production costs and business obligations, such as debts, rent and mortgage payments.   If the applicant also obtained a loan under the Paycheck Protection Program ("PPP"), another federal program established under the CARES Act to help small businesses with funding needs during the pandemic, the EIDL funds could not be used for the same purpose as the PPP funds.

III.     Scheme to Defraud

A.     Overview

11.     Beginning in at least April 2020 and continuing through November 2020, the defendant RAMON OSVALDO PENA, together with others, engaged in a scheme to fraudulently obtain funds from the SBA by submitting fraudulent EIDL applications that falsely represented the number of employees, gross revenues and cost of goods sold with respect to the businesses described herein for the Relevant Period.   As part of the scheme, PENA, together

with others, used the fraudulently obtained proceeds for purposes other than as operating capital in violation of the EIDL program terms.   The scheme resulted in the combined disbursement of more than $1 million in fraudulently obtained EIDL funds.

        B.      The Innovation Transport and Orlando Sanay Business EIDL Applications

           i.      The Innovation Transport Application

        12.     On or about April 3, 2020, Co-Conspirator 1, who co-owned Innovation Transport with the defendant RAMON OSVALDO PENA, submitted an EIDL application on behalf of Innovation Transport (the "Innovation Transport Application") falsely representing that Innovation Transport had 13 employees, gross revenues of $3,179,651 and cost of goods sold of $1,849,700 during the Relevant Period.   The Innovation Transport Application also falsely represented that Innovation Transport had non-profit/agriculture costs of $1,500,000 and secular services expenses of $2,800,000 even though Innovation Transport was not a non-profit/agricultural business or secular services provider.   Department of Labor ("DOL") records revealed that Innovation Transport did not report having any employees during the Relevant Period and Internal Revenue Service ("IRS") records revealed that Innovation Transport did not file taxes for the Relevant Period.

        13.     Co-Conspirator 1 submitted the Innovation Transport Application to the SBA from an Internet Protocol ("IP") address associated with his residence in Elizabeth, New Jersey (the "Sanay IP Address").   Co-Conspirator 1 electronically signed the Innovation Transport Application and agreed to be bound by the terms of the SBA Loan Authorization and Agreement, which outlined the permitted uses of the EIDL.   Based on Co-Conspirator 1's false representations, the SBA approved the Innovation Transport Application in the amount of $150,000, and on or about June 12, 2020, the SBA sent $149,900 (deducting processing fees) by

interstate wire from the SBA's bank account to Innovation Transport's business checking account (the "Innovation Transport Account") at Financial Institution 1, the identity of which is known to the Grand Jury.   The defendant RAMON OSVALDO PENA and Co-Conspirator 1 were both signatories on the Innovation Transport Account and controlled the account.   PENA separately submitted and signed an SBA PPP application on behalf of Innovation Transport and Innovation Transport received a PPP loan in the amount of $92,900.

ii.   The Orlando Sanay Business Application

14.   On or about August 11, 2020, Co-Conspirator 1 submitted an EIDL application on behalf of the Orlando Sanay Business (the "Orlando Sanay Business Application") falsely representing that the Orlando Sanay Business had 13 employees, gross revenues of $950,000 and cost of goods sold of $654,000 during the Relevant Period.   DOL records revealed that the Orlando Sanay Business did not report having any employees during the Relevant Period and IRS records revealed that the Orlando Sanay Business did not file tax returns consistent with the revenues and cost of goods sold represented in the Orlando Sanay Business Application.

15.   Co-Conspirator 1 submitted the Orlando Sanay Business Application to the SBA from the Sanay IP Address.   Co-Conspirator 1 electronically signed the Orlando Sanay Business Application and agreed to be bound by the terms of the SBA Loan Authorization and Agreement.   Based on Co-Conspirator 1's false representations, the SBA approved the Orlando Sanay Business Application in the amount of $148,000, and on or about August 28, 2020, the SBA sent $147,900 (deducting processing fees) by interstate wire from the SBA's bank account to Co-Conspirator 1's personal checking account ("Personal Account 1") at Financial Institution

1 (the "Orlando Sanay Business Funds").   The balance in Personal Account 1 in August 2020, preceding the receipt of the Orlando Sanay Business EIDL funds, was approximately $4,223.24.

        iii.    <u>Use of the EIDL Funds</u>

        16.    The defendant RAMON OSVALDO PENA and Co-Conspirator 1 misappropriated the EIDL funds received by Innovation Transport and the Orlando Sanay Business for their personal benefit and inconsistent with the EIDL program terms.   For example, approximately three weeks after the Orlando Sanay Business funds were transferred into Personal Account 1, as described above, on September 25, 2020, $67,500 was transferred by wire from Personal Account 1 to the Innovation Transport Account, which constituted roughly half the balance of Personal Account 1.   That same day, PENA withdrew $37,500 in cash and Co-Conspirator 1 withdrew $30,000 in cash from the Innovation Transport Account.

        17.    In or about and between September 25, 2020 and October 13, 2020, Co-Conspirator 1 transferred an additional $73,111.83 from Personal Account 1 to the Innovation Transport Account and also paid for personal expenses that over-drafted Personal Account 1. Over the course of September and October 2020, when the Innovation Transport Account held EIDL funds received by the Orlando Sanay Business and Innovation Transport, the defendant RAMON OSVALDO PENA and Co-Conspirator 1 dispersed nearly all those funds to related entities.   For example, $22,332.24 was transferred from the Innovation Transport Account to BCD in or about and between September 1, 2020 and October 30, 2020, at times with multiple transfers on the same day.   BCD, which was owned and operated by Individual 1, independently applied for and received an EIDL in the amount of $150,000.

C.      The IBM Enterprise EIDL Application

18.     On or about July 18, 2020, Co-Conspirator 2 submitted a fraudulent EIDL application on behalf of IBM Enterprise (the "IBM Enterprise Application") which falsely represented that IBM Enterprise had 31 employees and gross revenues of $1,234,000 during the Relevant Period.   DOL records revealed that IBM Enterprise had no employees during the Relevant Period and IRS records revealed that IBM Enterprise did not file taxes for the Relevant Period.   Co-Conspirator 2 submitted the IBM Enterprise Application from a Jamaica, New York IP Address belonging to Co-Conspirator 3's mother and electronically signed the IBM Enterprise Application from an IP address associated with Co-Conspirator 3's business.   Co-Conspirator 2 agreed to be bound by the terms of the SBA Loan Authorization and Agreement.   Based on Co-Conspirator 2's false representations, the SBA approved the IBM Enterprise Application in the amount of $150,000, and on or about July 19, 2020, the SBA sent $149,900 (deducting processing fees) by interstate wire from the SBA's bank account to Co-Conspirator 2's personal bank account ("Personal Account 2") at Financial Institution 2, an entity the identity of which is known to the Grand Jury.

19.     Co-Conspirator 2 misappropriated IBM Enterprise's EIDL funds.   For example, on or about October 15, 2020, Co-Conspirator 2 withdrew $22,575 from Personal Account 2.   On or about November 27, 2020, Co-Conspirator 2 made two electronic wire transfers from Personal Account 2 of approximately $45,000 and $81,350.   Co-Conspirator 2 later acknowledged that he misused the EIDL funds to purchase a home and cover family medical bills.

20.     The defendant RAMON OSVALDO PENA acted as a middleman between Co-Conspirator 2 and Co-Conspirator 3 in submitting the IBM Enterprise Application.

PENA also referred additional EIDL applicants to Co-Conspirator 3, including BCD, and Co-Conspirator 3 submitted other fraudulent EIDL applications to the SBA.

      D.      <u>The Square Holdings EIDL Applications</u>

      21.      On or about August 26, 2020, the defendant RAMON OSVALDO PENA submitted a fraudulent EIDL application on behalf of Square Holdings (the "First Square Holdings Application"), which falsely represented that Square Holdings was a freight company that had 13 employees, $1,616,500 in gross revenue and $909,900 in cost of goods sold for the Relevant Period.   DOL records revealed that Square Holdings had not reported having any employees during the Relevant Period and IRS records revealed that Square Holdings had not filed taxes for the Relevant Period.   The First Square Holdings Application identified a bank account held by PENA at Financial Institution 1 as the bank account designated to receive the EIDL funds.

      22.      On or about November 20, 2020, the defendant RAYMOND OSVALDO PENA submitted a second fraudulent application on behalf of Square Holdings, which falsely represented that Square Holdings was a finance company that had four employees, $1,606,957 in gross revenue and $999,454 in cost of goods sold for the Relevant Period (the "Second Square Holdings Application").   The SBA denied both the First Square Holdings Application and the Second Square Holdings Application.

COUNT ONE
(Conspiracy to Commit Wire Fraud)

      23.      The allegations set forth in paragraphs one through 22 are realleged and incorporated as if fully set forth in this paragraph.

      24.      In or about and between April 2020 and November 2020, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant

RAMON OSVALDO PENA, together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud the SBA, and to obtain money and property from the SBA by means of one or more materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, PENA and others did transmit and cause to be transmitted, by means of wire communications in interstate and foreign commerce, one or more writings, signs, signals, pictures and sounds, contrary to Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

### COUNT TWO
(Conspiracy to Commit Theft of Public Funds)

25.     The allegations set forth in paragraphs one through 22 are realleged and incorporated as if fully set forth in this paragraph.

26.     In or about and between April 2020 and November 2020, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant RAMON OSVALDO PENA, together with others, did knowingly and willfully conspire to embezzle, steal, purloin and convert to his own use and the use of others, without authority, money and things of value of the United States and a department and agency thereof, to wit: the SBA, the value of which exceeded $1,000, contrary to Title 18, United States Code, Section 641.

27.     In furtherance of the conspiracy and to effect its objects, within the Eastern District of New York and elsewhere, the defendant RAMON OSVALDO PENA, together with others, did commit and cause the commission of, among others, the following:

10

## OVERT ACTS

(i)       On or about April 1, 2020, Co-Conspirator 1 submitted SBA application number ending in 4044, resulting in the disbursement of $149,900 in SBA funds to an account jointly controlled by Co-Conspirator 1 and PENA.

(ii)      On or about August 12, 2020, PENA sent a text message to Conspirator 2 stating, "Let's go talk and an [sic] see [Co-Conspirator 3]?"

(iii)     On or about August 12, 2020, PENA received a text message from Co-Conspirator 2 stating in Spanish, "I have to see [Co-conspirator 3] also because I have to 'grease' him in cash.   Because of the loan."

(iv)     On or about August 26, 2020, PENA submitted SBA application number ending in 2897 on behalf of Square Holdings.

(v)      On or about November 20, 2020, PENA submitted SBA application number ending in 0223 on behalf of Square Holdings.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATIONS
## AS TO COUNTS ONE AND TWO

28.    The United States hereby gives notice to the defendant that, upon his conviction of either of the offenses charged herein, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offenses to forfeit any property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly as a result of such offenses, including but not limited to:

(i)      approximately $115,768.84 in United States currency seized from Bank of America account number 483086730539, and all proceeds traceable thereto;

(ii)    approximately $40,000.00 in United States currency seized from TD Ameritrade account number 426823012, and all proceeds traceable thereto;

(iii)    approximately $20,000.00 in United States currency seized from TD Ameritrade account number 455023421, and all proceeds traceable thereto;

(iv)    approximately $32,003.72 in United States currency seized from JP Morgan Chase Bank account number 669770023, and all proceeds traceable thereto;

(v)    approximately $60,710.27 in United States currency seized from Citibank account number 71300932, and all proceeds traceable thereto;

(vi)    one 2021 Mercedes Benz GLE SUV vehicle bearing vehicle identification number 4JGFB6BB9MA322153, and all proceeds traceable thereto;

(vii)    approximately $39,285.00 in United States currency seized on or about June 10, 2021 from a residence located on Guy R Brewer Boulevard in Jamaica, New York; and

(viii)    three (3) watches seized on or about June 10, 2021 from a residence located on Guy R Brewer Boulevard in Jamaica, New York.

29.    If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(a)    cannot be located upon the exercise of due diligence;

(b)    has been transferred or sold to, or deposited with, a third party;

(c)    has been placed beyond the jurisdiction of the court;

(d)    has been substantially diminished in value; or

(e)    has been commingled with other property which cannot be divided without difficulty;

12

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))


A TRUE BILL

_____
FOREPERSON


_____
BREON PEACE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

F. # 2021R00254
FORM DBD-34
JUN. 85

No.

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL DIVISION

THE UNITED STATES OF AMERICA

*vs.*

RAMON OSVALDO PENA,

Defendant.

## INDICTMENT

(T. 18, U.S.C., §§ 371, 981(a)(1)(C), 1349 and 351 et seq.;
T. 21, U.S.C. § 853(p); T. 28, U.S.C., § 2461(c))

*A true bill.*

_____
*Foreperson*

*Filed in open court this* _____ *day,*

*of* _____ *A.D. 20* _____

_____
*Clerk*

*Bail, $* _____

*Patrick J. Campbell, DOJ Trial Attorney (718) 254-6366*
*Garen S. Marshall, Assistant United States Attorney (718) 254-6569*